673 So.2d 1176 (1996)
Rodney SANDERS
v.
Richard A. SPECTOR, M.D.
No. 95-CA-2740.
Court of Appeal of Louisiana, Fourth Circuit.
April 24, 1996.
*1177 Joseph W. Thomas, New Orleans, for Plaintiff/Appellant, Rodney Sanders.
Edward J. Rice, Jr., Arthur F. Hickham, Jr., Adams & Reese, New Orleans, for Defendant/Appellee, Richard A. Spector, M.D.
Before BARRY, KLEES and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Rodney Sanders sued his doctor, Richard A. Spector, M.D., for damages to his reputation and character and for humiliation and embarrassment Sanders claims he sustained when Dr. Spector disclosed to Jill L. Ondrejko treatment Dr. Spector provided to Sanders in November, 1989, and made certain medical records available to Ondrejko, all without Sanders' consent. Dr. Spector answered, alleging that he acted at all times within state law and in accordance with the rules governing the patient-physician privilege and, alternatively, that any violation of Sanders' right of confidentiality was merely technical and resulted in no disclosure which was not otherwise legally available to the party to whom the information was disclosed.
Dr. Spector moved for Summary Judgment, contending that since the disclosure of his prior treatment of Sanders was made in connection with a medical malpractice claim made by Sanders against the government of the United States, the information was discoverable by the government and Sanders suffered no damages from its release. On 31 October 1995, the trial court granted Dr. Spector's motion. From that judgment, Sanders appeals. We affirm.

STATEMENT OF FACTS
In support of his Motion for Summary Judgment, Dr. Spector filed a copy of the petition filed by Sanders on 8 April 1994 in United States District Court for the Eastern District of Louisiana, Civil Action 94-1173 against the United States of America under the Federal Tort Claims Act (FTCA) for personal injuries sustained as a result of alleged medical malpractice that occurred at the Veterans Administration Medical Center in New Orleans where he underwent ear *1178 surgery. Dr. Spector also filed the affidavit of Jill L. Ondrejko, assistant United States Attorney who defended the United States in the FTCA suit. According to Ondrejko's affidavit, in her capacity as attorney in that case she requested an independent medical examination of Sanders by Dr. Spector and sought to use Dr. Spector as a trial expert. She learned only after the independent medical examination had taken place that Dr. Spector had seen Sanders in 1989 on a consult involving Sanders' loss of hearing and the possibility of surgery. Dr. Spector mentioned the 1989 visit in his report to Ondrejko and included the medical record reflecting that consultation. The 1989 visit was relevant to the FTCA claim because it involved the same condition of which Sanders complained and discussions by Dr. Spector with Sanders in 1989 concerning the possibility of surgery and its attendant complications was relevant to both Sanders' negligence claim and to the issue of informed consent raised by Sanders in the FTCA case. Dr. Spector's affidavit confirms that Ondrejko contacted him and asked him to perform an independent medical examination on Sanders and act as an expert witness in the FTCA suit. He examined Sanders on 26 October 1994 pursuant to Ondrejko's request to determine whether the middle ear operation performed by Government physicians had used proper procedures, whether there had been proper informed consent, and the extent of Sanders' damages. After the examination, Dr. Spector discovered that he had seen Sanders on 7 November 1989 at Touro Infirmary, at which time he consulted with Sanders regarding his hearing loss and middle ear condition, as well as the possibility of surgery and its complications. He then released information to the government pertaining to the 1989 visit which was pertinent to the FTCA suit. Dr. Spector submitted Sanders' signed medical release dated 20 December 1994 to Touro Infirmary, authorizing blanket release to the United States Attorney for the Eastern District of Louisiana, through Ondrejko, of all medical information and records relative to Sanders' treatment and care.
Sanders submitted no countervailing affidavits, and does not raise on appeal the existence of disputed material facts.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-C-1480 (4/11/94), 634 So.2d 1180, 1182; Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La.1991).
A summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B).
FIRST ASSIGNMENT OF ERROR: Sanders did not waive the patient-physician privilege when he filed suit pursuant to the Federal Tort Claims Act.
La.C.E. art. 510(B)(2) provides in pertinent part:
B. (2) Exceptions. There is no privilege under this Article [pertaining to the health care provider-patient privilege] in a non-criminal proceeding as to a communication:
(a) When the communication relates to the health condition of a patient who brings or asserts a personal injury claim in a judicial or worker's compensation proceeding.
* * * * * *
(c) When the communication is relevant to an issue of the health condition of the patient in any proceeding in which the patient is a party and relies upon the condition as an element of his claim or defense, ....
La.C.E. art. 510(E) provided, prior to the 1995 amendment, in pertinent part:
E. Waiver. The exceptions to the privilege set forth in Paragraph B(2) shall constitute a waiver of the privilege only as to testimony at trial or to discovery of the privileged communication by one of the discovery methods authorized by Code of Civil Procedure Article 1421 et seq., and in accordance with the applicable provisions of Part II of Chapter 17 of Title 13 of the *1179 Louisiana Revised Statutes of 1950; provided that there shall be no health care provider-patient privilege in medical malpractice claims as defined in R.S. 40:1299.41 et seq. as to information reasonably related and relevant to the defense of the merits of said medical malpractice claims.
Sanders contends that the exception to the health care provider-patient privilege contained in La.C.E. art. 510(E) does not apply to medical malpractice claims filed pursuant to the FTCA, since such a claim is not brought pursuant to La.R.S. 40:1299.96 or La.R.S. 13:3715.1.[1] The disclosure was made in the context of a medical malpractice claim brought under the FTCA. The Code of Evidence does not limit the exception to communications made by the defendant in the medical malpractice action, but allows discovery by any of the Code of Civil Procedure's discovery methods. The definition of malpractice found in section 1299.41 does not incorporate a requirement that the health care provider be qualified under the Louisiana Medical Malpractice Act or that the action be filed pursuant to the act. We conclude that "malpractice claims as defined in R.S. 40:1299.41" comprehends a malpractice claim brought in federal court under the FTCA, and find that the trial court correctly refused to adopt Sanders's restrictive reading of the statute.
Having voluntarily disclosed the record of his prior treatment of Sanders, not in response to a discovery request pursuant to the Code of Civil Procedure, Dr. Spector breached the health care provider-patient privilege. However, this finding does not complete our inquiry. Although the privilege was violated, we find that, under the undisputed facts of this case, the violation does not constitute a compensable offense under the Civil Code.
In his petition, Sanders seeks compensation for damages to his character and reputation and damages for humiliation and embarrassment. These are comprehended by Planiol as moral damages, compensations for which
assure an efficacious repression of culpable acts which do not have pecuniary consequences. The indemnity accorded to the victim constitutes an alternative reparation. The great difficulty which one encounters here consists in fixing the indemnity, it not being possible to evaluate the indemnity pecuniarily. As a matter of fact the judges have sovereign power to evaluate the indemnity accorded, and such indemnity takes on the character of a civil penalty. 2 Planiol, Traite Elementaire de Droit Civil, No. 868A, Louisiana Law Institute Translation (1959).
Among the applications of moral damage, Planiol mentions injuries to the honor, as in cases of defamation. Id.
However, Sander does not allege that the disclosures made by Dr. Spector concerning his treatment in 1989 were untrue. Thus, there can be no compensation for "damage to his character and reputation." Such damages, comprehended in claims for slander and defamation, are compensable only where the statement giving rise to them is false.
The claim for humiliation and embarrassment presents a similar issue. According to the petition, the breach of privilege occurred on 9 November 1994; according to Sanders' signed medical record release (Exhibit E to the Motion for Summary Judgment), Sanders released this information on 20 December 1994. This is not the sort of situation giving *1180 rise to damages for humiliation and embarrassment. The premature release of information by Dr. Spector was made to the assistant United States Attorney named in Sanders' medical records release, and in the context of the lawsuit in connection with which the release was given. In Moresi v. State, through Dept. of Wildlife and Fisheries, 567 So.2d 1081, 1095 (La.1990), a suit, inter alia for mental damages allegedly sustained by hunters who were detained and searched by state wildlife agents, the Louisiana Supreme Court held:
This case does not present a situation in which recovery for mental distress may be based upon a breach of contract or a separate tort such as assault, battery, false imprisonment, trespass to land, nuisance, or invasion of the right to privacy.... Nor do the facts of the present case come within the general rule of recovery for the independent tort of intentional infliction of mental distress.
The Supreme Court in Moresi cited Restatement of Torts 2d, section 46, American Law Institute (1965):
One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress....
The commentator to this section notes:

b. [E]motional distress may be an element of damages in many cases where other interests have been invaded, and tort liability has arisen apart from the emotional distress. Because of the fear of fictitious or trivial claims, distrust of the proof offered, and the difficulty of setting up any satisfactory boundaries to liability, the law has been slow to afford independent protection to the interest in freedom from emotional distress standing alone....
* * * * * *

d. Extreme and outrageous conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community....
In White v. Monsanto Company, 585 So.2d 1205, 1208-1210 (La.1991), the Supreme Court repeated its "extreme and outrageous" test. The premature disclosure of the medical records herein does not constitute such extreme and outrageous conduct. Nor is it conduct calculated to cause and causing mental and physical harm. See Boudreaux v. Allstate Finance Corp., 217 So.2d 439, 444 (La.App. 1 Cir.1968).
In his brief on appeal, Sanders does not address the damage claims stated in his petition, but raises a third putative basis for liability, contending that Dr. Spector's premature disclosure caused Sanders to lose his faith in the medical profession, making him unable to enter into a fiduciary relationship with a physician. Sanders contends that Dr. Spector's action had a "chilling effect" on Sanders' ability to obtain medical counselling and "may have adversely affected Mr. Sanders' health."
Sanders offers no authority for a cause of action for such speculative, unintended, unarticulated concern that an unrelated health care provider at some uncertain future time might prematurely disclose Sanders' medical records, breaching the privilege. Our independent research reveals nothing to support such a claim. While the law grants recovery for articulated fear of contracting a disease following negligently or intentionally caused exposure, we cannot reasonably extend that cause of action to the facts of the instant case. Because contracting a contagious disease is a foreseeable and natural potential consequence of exposure to that disease, anxiety in connection with the exposure may be reasonable, foreseeable and compensable under certain limited circumstances. However, a future unrelated breach of a privilege is not *1181 a foreseeable and natural consequence of a current breach, and anxiety concerning such a future breach is not a foreseeable consequence of a current breach.
The possibility that Sanders will not receive appropriate medical attention as a consequence of his anxiety is even more remote and fails the duty risk analysis enunciated by this court in Roberts v. Benoit, 605 So.2d 1032, 1057 (La.1991), on reh'g (La.1992):
To prevail on a negligence claim under La.Civ.Code arts. 2315 and 2316 a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element.) Roberts, 605 So.2d at 1051.
* * * * * *
The critical test in Louisiana, however, is phrased in terms of the "ease of association" which melds policy and foreseeability into one inquiry: Is the harm which befell the plaintiff easily associated with the type of conduct engaged in by the defendant? Roberts, 605 So.2d at 1054.
* * * * * *
The essence of the legal cause inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the duty. Id., citing Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
"The question of whether a duty exists in a particular set of circumstances is a question of law for the court to decide." Mathieu v. Imperial Toy Corp., 94-0952 (La. 11/30/94), 646 So.2d 318, 322.
Under the facts alleged in the petition and the undisputed material facts adduced in the exhibits to Dr. Spector's motion, we find Summary Judgment to be appropriate.
SECOND ASSIGNMENT OF ERROR: The trial court erred in applying the holding of Acosta v. Cary, 365 So.2d 4 (La.App. 4 Cir. 1978) to this case.
Because the trial court did not issue Reasons for Judgment, we cannot determine that it applied the Acosta holding. However, Sanders states unequivocally in brief and in his opposition to the Motion for Summary Judgment below that this is not a suit for breach of a privacy right, but for breach of the health care provider-patient privilege. Therefore, the Acosta court's holding that a patient has no privacy right that would prevent an examining physician from releasing prior evaluation reports to the plaintiff's employer is irrelevant to our consideration of Sanders' appeal. This assignment of error is moot.
THIRD ASSIGNMENT OF ERROR: The trial court erred in finding that Mr. Sanders did not suffer any damages.
The existence, vel non of damages arising from the breach of the health care provider-patient privilege is irrelevant where, as here, we have found that the breach did not constitute an offense giving rise to compensable damages. This assignment of error is moot.

DECREE
For the foregoing reasons, the judgment of the trial court granting Dr. Spector's Motion for Summary Judgment is affirmed.
AFFIRMED.
NOTES
[1] The 1995 amendment to La.C.E. art. 510(E) substituted ", or pursuant to R.S. 40:1299.96, or pursuant to R.S. 13:3715.1" for "and in accordance with the applicable provisions of Part II of Chapter 17 of Title 13 of the Louisiana Revised Statutes of 1950" following "Civil Procedure Article 1421 et seq." La.R.S. 40:1299.96 provides a mechanism by which a patient may obtain copies of his own health care records. La.R.S. 40:1299.96(2)(e) specifically provides that nothing in that section shall be construed to limit access to patient record in any legally permissible manner subject to the provisions of La.R.S. 13:3734 concerning privileged communications. La.R.S. 13:3715.1 provides for discovery of medical and hospital records, and section B provides that the exclusive method by which medical, hospital or other records may be disclosed shall be pursuant to and in accordance with the provisions of La.R.S. 40:1299.96 or Code of Evidence Article 510, or a lawful subpoena or court order issued in the litigation to which the patient is a party. There is no statutory exclusion of medical malpractice claims brought under the FTCA.