# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 05-0507

MARY E. CORMIER

VERSUS

ROBERT COLSTON & ALLSTATE INSURANCE CO.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 2002-1804,
HONORABLE DAVID PAINTER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

James D. Cain, Jr.
Jennifer L. Ray
Lundy & Davis, LLP
Post Office Box 3010
Lake Charles, LA  70601
(337) 439-0707
COUNSEL FOR PLAINTIFF/APPLELLANT:
    Mary E. Cormier

Maurice L. Tynes
Maurice L. Tynes & Associates, PLC
4839 Ihles Road
Lake Charles, LA  70605
(337) 479-1173
COUNSEL FOR DEFENDANTS/APPELLEES:
    Robert Colston
    Allstate Insurance Co.

PETERS, J.

Mary Cormier brought suit against her landlord, Robert Colston, and his liability insurer, Allstate Insurance Company (Allstate), to recover damages she sustained when she fell down the steps of her rented house in Lake Charles, Louisiana, and injured her right knee. After trial, a jury found that she and Mr. Colston were equally at fault in causing the accident and awarded her $15,000.00 in future medical expenses, but it declined to award her any additional damages. Ms. Cormier appealed, asserting in her three assignments of error that the jury erred in failing to award her general damages, in failing to award her past medical expenses, and in assessing her with fifty percent of the fault in causing the accident. Mr. Colston and Allstate answered the appeal, asserting that the jury erred in awarding any damages at all and in assessing Mr. Colston with any fault in causing the accident. For the following reasons, we affirm the jury's award of future medical expenses, reverse the jury's rejection of Ms. Cormier's claim for general damages and for past medical expenses, and render judgment awarding Ms. Cormier damages in both of those categories.

**DISCUSSION OF THE RECORD**

There is little dispute concerning the facts giving rise to this litigation. Sometime prior to April 29, 2001, Mr. Colston had rented Ms. Cormier one of the houses he owned in Lake Charles, Louisiana. Ms. Cormier was occupying the house as her residence, and the lease agreement was subject to the terms of a Department of Housing and Urban Development (HUD) program. On April 29, 2001, Ms. Cormier fell when a corner of the concrete steps leading to the side door of the house crumbled under her foot as she attempted to enter her house through that door. She

asserted that she injured her right knee when she fell and that she incurred both general and special damages as a result of that accident and injury.

The matter was tried before a jury, with only three witnesses testifying: Ms. Cormier; Mr. Colston; and Dr. Lynn Foret, a Lake Charles, Louisiana orthopaedic surgeon, who testified by deposition. The bulk of the evidence with regard to medical causation and treatment is found in a 275-page exhibit consisting of Dr. Foret's medical records.

After completing its deliberations, the jury returned the verdict in the form of interrogatories provided by the trial court. In doing so, the jury concluded as to liability that Mr. Colston "failed to exercise reasonable care with regard to the defect in the stairs and that the failure caused or contributed to the accident." The jury further concluded that Ms. Cormier "was damaged as a result of the defect" but that she also failed to exercise reasonable care and that her conduct contributed to the accident. The jury then allocated fault equally between Ms. Cormier and Mr. Colston.

With regard to the amount of damages sustained by Ms. Cormier as a result of the accident, the jury was presented with the following interrogatory and responded as follows:

WHAT AMOUNT OF DAMAGES, IF ANY, WOULD FAIRLY COMPENSATE MARY ELIZABETH CORMIER FOR THE FOLLOWING:

| | |
|---|---|
| PAST PHYSICAL PAIN AND SUFFERING | $ 0 |
| FUTURE PHYSICAL PAIN AND SUFFERING | $ 0 |
| PAST AND FUTURE MENTAL ANGUISH | $ 0 |
| PAST MEDICAL EXPENSES | $ 0 |
| FUTURE MEDICAL EXPENSES | $ $15,000.00 |

2

_____LOSS OF ENJOYMENT OF LIFE                                    $_____0_____

**OPINION**

Both Ms. Cormier and the defendants assert that the jury erred in the apportionment of fault. In her third and final assignment of error, Ms. Cormier argues that all of the fault in causing the accident should be attributed to Mr. Colston, and the defendants argue that the opposite result is correct. We will consider these arguments first.

Although the trial record is not clear as to the specific date, sometime before April 29, 2001, a work crew employed by Mr. Colston ran over the step with a truck, causing a chip and hairline fracture on the corner of the step which crumbled under Ms. Cormier. She was aware of the incident and physically inspected the step on that same day. According to Ms. Cormier, she observed that the corner of the step was chipped off and that there existed a thin hairline fracture on the adjacent part of the step. Mr. Colston was also aware of the incident on the day it occurred because he arrived on the scene immediately after the truck had struck the step. He did not initially take any steps to repair the step because, as he stated at trial, "[I]t just was a little corner down there about 7 inches off the ground, and I felt that it wasn't important and I just didn't do anything about it."

Ms. Cormier testified that she complained to Mr. Colston about the cracked step "on a couple of occasions" before the accident and that she also complained to the inspector from the HUD program. She introduced into evidence a copy of a form letter from HUD to Mr. Colston dated April 29, 2001, instructing him to repair certain things at Ms. Cormier's residence, including "CONCRETE STEPS AROUND SIDE OF HOUSE." Mr. Colston did not recall anyone complaining to him about the step,

3

but did acknowledge that his daughter had mentioned something about receiving the letter from HUD.

In support of her contention that all fault should be assessed to Mr. Colston, Ms. Cormier contends that Mr. Colston created the defect in a place where she was required to step in order to gain entrance to the house and that the defect in the form of a hairline crack was misleading, considering the seriousness of the risk. On the other hand, the defendants argue that the risk of injury was slight to begin with and that the defect had been in place for a sufficient time for Ms. Cormier to be familiar with it, such that she was solely at fault.

The finding of percentages of fault is a factual determination. Thus, an appellate court reviewing a fact finder's allocation of fault owes the same deference to that finding as it does to any other factual determination and should disturb a fact finder's allocation of fault only when it is clearly wrong or manifestly erroneous. *Clement v. Frey*, 95-1119 (La. 1/16/96), 666 So.2d 607. Our determination in that regard is guided by the factors set forth in *Watson v. State Farm Fire & Casualty Insurance Co.*, 469 So.2d 967, 974 (La.1985):

> (1) [W]hether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.

Applying these factors to the matter before us, it is clear that Mr. Colston's fault contributed to the accident. Mr. Colston's employees caused the damage to the step, and his attention had been called to the damage and the necessity for repairs. He knew he had to replace the steps and was aware of the gravity of the risk because it involved one of two sets of steps that his tenant used regularly. Replacement

4

involved merely picking up the damaged one and setting a new one in its place. He delayed doing so, and, in the meantime, Ms. Cormier suffered the very harm replacement of the steps would have avoided. We find no manifest error in the jury's allocation of at least fifty percent of the fault to him.

At the same time, we cannot say that the jury was manifestly erroneous in finding that Ms. Cormier shared the fault in that same proportion. She was well aware of the damage and the need for replacement, as she had reported it to the appropriate persons on more than one occasion. Yet, she stepped directly onto the damaged area when she attempted to enter the house and could not explain this oversight on her part. In assessing fault, one cannot justify forgetfulness of such a known danger, even if the forgetfulness is only momentary.

Because we find no manifest error in the jury's allocation of fault in causing the accident, we reject Ms. Cormier's assignment of error on this issue as well as the defendants' argument on this issue raised in their answer.

Having resolved the issue of fault, and having found that Mr. Colston was at fault in causing the accident sued upon, we next consider the remaining arguments with relation to the jury's damage awards. Ms. Cormier asserts in her remaining two assignments of error that the jury erred in not awarding her general damages and in not awarding her past medical expenses. The defendants assert by answer to the appeal that Ms. Cormier is entitled to no damage award and that the jury erred in awarding her $15,000.00 for future medical expenses.

A review of the entire record reveals that Ms. Cormier has a lengthy medical history which is somewhat confusing because it involves both of her knees. Ms. Cormier is a long-time employee of the Calcasieu Parish School Board and had

5

injured her left knee in an on-the-job accident in 1995. At that time, she began seeing Dr. Foret for the treatment of that injury, and, from that time until September 29, 1999, the doctor treated her only for complaints related to the left knee. At the time of trial of this matter in November of 2004, Ms. Cormier was still under Dr. Foret's care for that particular injury.

On September 29, 1999, Ms. Cormier did complain to Dr. Foret of some right knee soreness resulting from a fall on some rocks. When she again saw the doctor on June 6, 2000, for follow-up treatment of the left knee, she again told him of the right knee injury first mentioned in September of 1999. Dr. Foret diagnosed that condition as an ongoing osteoarthritis condition, and, in August of that year, he instructed her on the care of the condition and prescribed anti-inflammatory medication for her right knee. When he saw her again on March 6, 2001, she related to him that both knees hurt. Dr. Foret's records reflect that on that day he found a mild effusion to "the knee," but the records do not reflect which knee. After the accident of April 29, 2001, and before trial, Dr. Foret saw Ms. Cormier on numerous occasions. On some of these visits, Dr. Foret treated Ms. Cormier for complaints relating to either one knee or the other, and, on other visits, he treated her for complaints involving both knees. Ms. Cormier testified that, after the fall on April 29, 2001, her right knee gave her constant trouble with pain and swelling and that it was far worse than it was before the accident.

Dr. Foret saw Ms. Cormier for complaints about the right knee arising from the April 29, 2001 accident on May 11, 2001, or only a few days after the accident. He testified that, at that time, Ms. Cormier's right knee was grossly swollen and tender, her right calf was swollen, and she was suffering significant pain. He attributed the

6

condition he observed to the April 29 fall and initially concluded that the fall had damaged her right kneecap and aggravated the preexisting osteoarthritic condition in the right knee. When Ms. Cormier returned to see him in June of 2001, Dr. Foret injected her right knee with Kenalog and Marcaine in an attempt to give her some comfort from the pain. By the next month, the right knee was presenting significant problems in that it was locking and giving way, with effusion and pain.

By August of 2001, the right knee pain still persisted. To treat the pain, stiffness, decreased range of motion, crepitation, and edema, Dr. Foret began a course of Hyalgan injections. Notes in his medical records revealed that he chose this means of treatment because he had found that a series of five intra-articular injections of Hyalgan will usually relieve pain in the majority of patients for six months.

Ms. Cormier completed the Hyalgan treatments in September of 2001 and did not see Dr. Foret for treatment of her right knee again until February of 2002. At that time, X-rays revealed degenerative changes in the right knee, and Dr. Foret continued to believe her primary problem was osteoarthritis. To treat that condition, he administered a Lidocaine injection.

When Dr. Foret next saw Ms. Cormier in March of 2002, she was having severe crepitus and grinding in the right knee with medial joint line pain and effusion. Based on her complaints and his examination findings, Dr. Foret decided to schedule Ms. Cormier for an MRI. The MRI was performed on April 15, 2002, the results of which revealed a torn meniscus in the right knee.

It is significant to note that, during the time that Dr. Foret was treating Ms. Cormier for her right knee complaints, he was also continuing to see her as a workers' compensation patient based on her left knee injury. He provided regular reports to

7

Ms. Cormier's employer concerning the left knee. Dr. Foret's medical records reflect that, at one point, the employer's adjuster requested that the doctor not "process treatment on her right knee" with his workers' compensation reports. There were times, however, when his reports, though generally specifying whether the condition being treated was one knee or the other, involved both knees. In his testimony, Dr. Foret stated that he "kind of ignored her for a while and worried about the left knee more than anything else and the right knee apparently never really came around."

When questioned concerning causation, Dr. Foret stated that Ms. Cormier suffered from arthritis in the right knee before the April 29, 2001 accident and that it was probably severe. However, he still was of the opinion that the April 29 fall caused a right kneecap injury as well as the internal meniscus tear in the right knee joint as revealed by the April 2002 MRI. He was of the opinion that walking on the torn knee cartilage not only aggravated the preexisting osteoarthritis, but it also could continue to cause damage to the joint unless and until it is repaired. He suggested that osteoarthritis is accelerated in people with a meniscus tear. He described the torn knee cartilage as big and painful, causing her to hurt and the knee to swell, lock, and give way sometimes. According to the doctor, "if you continue to walk on [a] torn knee cartilage, it's guaranteed to give you degenerative changes in the joint."

The outstanding medical bills for services rendered prior to trial totaled $3,276.50.[1] Additionally, Dr. Foret testified that Ms. Cormier needed surgical intervention to repair the right knee, relieve the pain, and avoid further damage. He estimated that the cost of the required surgery and hospital care would range from $7,500.00 to $8,500.00.

---

[1]Dr. Foret's unpaid charge was $2,170.00, Lake Charles Imaging Center's bill was $875.50, and that of Radiology Associates was $231.00.

With regard to the defendants' complaints concerning the $15,000.00 jury award for future medicals, we first note that in neither their answer to the appeal nor their argument in brief do they assert that the award is excessive. Rather, they ask that it be eliminated entirely. The defendants' argument is that the future medical award was made out of sympathy and generosity and was not based on the law and the evidence, such that the plaintiff was actually not entitled to any award at all. We are restricted to a review of this award in accordance with the error assigned.

Medical expenses are a component of special damages. *Thibeaux v. Trotter,* 04-482 (La.App. 3 Cir. 9/29/04), 883 So.2d 1128, *writ denied*, 04-2692 (La. 2/18/05), 896 So.2d 31. The plaintiff bears the burden of proving special damages by a preponderance of the evidence. *Iwamoto v. Wilcox*, 04-1592 (La.App. 3 Cir. 4/6/05), 900 So.2d 1047. In meeting her burden of proof on the issue of future medical expenses, the plaintiff must show that, more probably than not, these expenses will be incurred and must present medical testimony that they are indicated and the probable cost of these expenses. *Veazey v. State Farm Mut. Auto Ins.*, 587 So.2d 5 (La.App. 3 Cir. 1991). An appellate court reviews an award of special damages pursuant to the manifest error standard of review. *Iwamoto*, 900 So.2d 1047.

Our review of this record reveals that Ms. Cormier proved that she was entitled to an award for future medical expenses. Indeed, there was no evidence to the contrary. Dr. Foret, the only medical witness in the case, found a torn meniscus in her right knee caused by the April 2001 fall and was emphatic in his opinion that future surgery for its repair was necessary. He estimated the cost of the surgery and hospital expenses related to the surgery. The jury found that Ms. Cormier was injured as a result of the April 29, 2001 fall and obviously believed Dr. Foret with regard to the

9

need for future surgery because it awarded future medical expenses. These are findings of fact that will not be disturbed by an appellate court in the absence of manifest error. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). We find no manifest error in the award of future medical expenses and reject the defendants' argument in that regard.

We now turn to Ms. Cormier's remaining assignments of error to the effect that the jury erred in failing to award her anything for past medical expenses and general damages. The jury's verdict in these respects appears internally inconsistent. The jury specifically found that Mr. Colston failed to exercise reasonable care with regard to the defect in the concrete steps, that the failure on his part contributed to the accident, and that Ms. Cormier was damaged as a result of the accident. Despite these specific findings, the jury then ignored the uncontradicted past medical expenses associated with treatment for the same injury for which it awarded future medical expenses. Additionally, and in the face of the undisputed evidence of objective signs of pain and disability immediately after the accident as well as Dr. Foret's undisputed testimony attributing the aggravation of her right kneecap osteoarthritis and the torn meniscus to the accident of April 29, 2001, the jury nevertheless failed to award general damages. Our task is to determine if there is a reasonable basis discernable in the record for these apparent inconsistencies in the jury's verdict. In other words, we must determine whether they are in fact inconsistencies.

The supreme court in *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70, pointed out that the apparent inconsistency in a personal injury jury verdict where the jury awards medical expenses but not general damages may not be an inconsistency at all. The holding in that case requires us to pay close attention to the

facts of the matter under review, because the facts will explain whether or not such a verdict is justified. Thus, the underlying analysis involves an evaluation of the jury's findings of fact, and this evaluation is done under the manifest error or clearly wrong standard. *Basco v. Liberty Mut. Ins. Co.*, 05-0143 (La.App. 3 Cir. 8/17/05), 909 So.2d 660.

Applying the manifest error standard to the case at hand, we conclude that the failure of the jury to award damages in the questioned categories cannot be reasonably explained from this record. With regard to the past medical expenses, it is possible that the jury was confused because of the expenses paid by the employer with regard to the left knee injury covered by workers' compensation. Additionally, the jury may have been further confused by the fact that Mr. Colston had paid $1,593.00 after the accident for Ms. Cormier's medical treatment and her testimony that she never received a bill from Dr. Foret for his services in excess of what Mr. Colston paid. This confusion could have left the jury with the belief that there were no outstanding past medical bills.[2] Whatever its rationale in not awarding past medical expenses, it is not supported by the record. At trial, the defendants did not dispute the fact that the medical bills were incurred; they only questioned the necessity of the treatment. By its factual conclusions and award of future medical expenses, the jury could not have reasonably ignored the existence of past medical

---

[2]The total past medical expenses were $4,869.50. When reduced by the amount paid by Mr. Colston, the total balance due was $3,276.50.

expenses.[3] We find that Ms. Cormier established her entitlement to past medical expenses in the amount of $3,276.50.

Finally, we turn to Ms. Cormier's complaint that the jury erred in not awarding her general damages. As is the case with the past medical expenses, the failure in this regard is irreconcilable with other facts found by the jury and with the evidence. The record is replete with evidence that the trauma Ms. Cormier suffered to the right kneecap caused immediate pain and swelling, aggravated preexisting arthritic problems, and resulted in the torn meniscus. Not only did she continue to suffer pain and anguish from the injury, but also the simple act of walking caused further degenerative changes in the joint. The post-surgery expectations or prognosis can be made only after the arthroscopic procedure to determine the actual condition of the knee. In the meantime, according to Dr. Foret, the plaintiff should not do squatting, deep knee bends, stair climbing, or repetitive bending. Although the evidence did little to establish future general damages other than the pain and suffering associated with surgery and recovery therefrom, it clearly established that Ms. Cormier has in fact suffered general damages in the past and will to some extent suffer in the future as a result of the accident, and the jury erred manifestly in finding that she suffered no general damages at all.

If the factual findings are manifestly erroneous or clearly wrong such that the plaintiff is entitled to an award for a particular category of damages, and the jury fails to make such an award, the reviewing court is to perform a *de novo* review of the record and make an award as contemplated by *Mart v. Hill*, 505 So.2d 1120

---

[3]As an example, part of the stipulated past medical expenses was the cost of the MRI, which, when performed, revealed the injury for which Dr. Foret recommended surgery. The only evidence of future medical expenses was the cost of that surgery. While awarding future medical expenses, the jury inexplicably failed to award the cost of the medical test that established the need for that surgery.

(La.1987). *Basco*, 909 So.2d 660. Based on our review of the record as recited above, we will award $3,276.50 for past medical expenses. The plaintiff's counsel in brief suggests a minimum of $30,000.00 in general damages, and we agree with that suggestion.

## DISPOSITION

For the foregoing reasons, we reverse the trial court's judgment insofar as it fails to award past medical expenses and general damages. We render judgment awarding the plaintiff, Mary E. Cormier, the sum of $3,276.50 for past medical expenses and the sum of $30,000.00 in general damages. We affirm the remaining portions of the judgment and tax all costs of this appeal to the defendants, Robert Colston and Allstate Insurance Company.

**AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.**