964 So.2d 304 (2007)
Denton Ray COUTEE
v.
Rayland K. BEURLOT, M.D.
No. 2006-C-2943.
Supreme Court of Louisiana.
September 5, 2007.
Gold, Weems, Bruser, Sues & Rundell, Eugene Joseph Sues, Lacey Huffman Edwards, Alexandria, for Applicant.
Rivers, Beck, Dalrymple & Ledet, Eugene A. Ledet, Jr., Alexandria, for Respondent.
*305 TRAYLOR, Justice.
We granted certiorari in this case in order to determine whether the appellate court erred in awarding ten thousand dollars ($10,000) to Plaintiff for emotional damage purportedly sustained as a result of a breach of the physician-patient privilege. For the reasons that follow, we reverse the appellate court's decision.

FACTS AND PROCEDURAL HISTORY
Delton Ray Coutee ("Coutee") was employed as a roughneck by Global Marine Drilling Company ("Global"), and on January 7, 2001, while working offshore, Coutee allegedly sustained injuries as a result of a slip and fall. Subsequent to his accident, Coutee filed a maritime action in state court against Global, pursuant to the provisions of the Jones Act, and he sought general damages as well as maintenance and cure benefits. Coutee sought medical treatment from his primary care physician Dr. Robert C. Smith ("Dr. Smith"). Because Dr. Smith wanted Coutee to be evaluated by a doctor specializing in physical medicine and rehabilitation, Dr. Smith referred Coutee to Dr. Rayland K. Beurlot ("Dr. Beurlot").
On August 7, 2001, Dr. Beurlot met with Coutee in order to conduct a medical evaluation. Although Dr. Beurlot met with Coutee only once, Dr. Beurlot reviewed Coutee's medical records from Dr. Smith; reviewed Coutee's functional capacity exam (which exam was performed by another healthcare provider); conducted a physical examination of Coutee; and talked with Coutee about Coutee's medical history. This medical evaluation was meant to show the extent of Coutee's injuries, the best treatment for said injuries, and the degree of physical labor that could be tolerated by Coutee without the risk of further injury and/or aggravation of the existing condition(s). Based upon his analysis, Dr. Beurlot concluded that Coutee could perform light-to-medium level work. Dr. Beurlot noted inconsistencies between various aspects of the medical evaluation, including Coutee's claims of pain for which there was no physical explanation. Because of the aforementioned inconsistencies, Dr. Beurlot could not recommend that Coutee return to work of a medium-to-heavy level.
On June 19, 2003, Dr. Beurlot was deposed, and thus, attorneys for Global and Coutee were able to thoroughly examine Dr. Beurlot about his conclusions regarding Coutee's medical condition and/or work capacity. At his deposition, Dr. Beurlot reiterated his conclusion that Coutee could safely perform work of a light-to-medium level. Further, Dr. Beurlot testified that he thought Coutee was magnifying his symptoms, thereby leading to the inconsistencies within the medical evaluation; however, because of the difficulty in objectively measuring an individual's level of pain, Beurlot was unable to recommend that Coutee be released to work at full duty (i.e. medium-to-heavy level work). Dr. Beurlot stated that he would feel comfortable allowing Coutee to return to a medium-to-heavy level of work, provided that Coutee had no further complaints of pain. Thus, Dr. Beurlot's assessment that Coutee could not perform medium-to-heavy labor was primarily based upon Coutee's declarations of pain and/or discomfort.
After Dr. Beurlot's deposition, but prior to the commencement of the maritime trial, Global's attorney Lawrence R. DeMarcay ("DeMarcay") requested that Dr. Beurlot meet with him in order to discuss some additional documents in Global's possession. On January 15, 2004, Dr. Beurlot met with DeMarcay in order to discuss these documents, which documents *306 included (1) a psychological assessment of Coutee; (2) a psychiatric evaluation of Coutee; (3) a transcript of a recorded telephone conversation between DeMarcay and Coutee's new employer, Allied Discount Tire and Brake, Inc. ("Allied"); and (4) Coutee's personnel records from Allied. Information contained within the aforementioned documents demonstrated that Coutee had been employed with Allied as a tire tech, a position involving heavy labor. Further, these documents revealed that Coutee performed this heavy labor for approximately seven to eight months without ill effect. Thus, Dr. Beurlot was asked whether this additional information would alter his previous assessment of Coutee's work capacity. Taking into account this "new" information, Dr. Beurlot opined that Coutee could perform a medium-to-heavy level of work.
On January 26, 2004, a four-day bench trial commenced regarding Coutee's maritime action. At trial, Dr. Beurlot testified that Coutee's work capacity was of a medium-to-heavy level, and thus, the trial court ultimately decided to award Coutee only maintenance and cure benefits, with no award for general damages.[1] As a result of the trial court's decision, Coutee filed a lawsuit against Dr. Beurlot on October 14, 2004. Coutee asserted that Dr. Beurlot changed his testimony regarding Coutee's work capacity as a direct result of Dr. Beurlot's ex parte meeting with DeMarcay, and as such, Coutee alleged that Dr. Beurlot breached the physician-patient privilege. Coutee maintained that he suffered mental anguish as a result of this breach, as Coutee claimed damages for the invasion of his privacy as well as the intentional infliction of emotional distress. In response to Coutee's lawsuit, Dr. Beurlot maintained that he did not breach the physician-patient privilege during his meeting with DeMarcay, because all of the information discussed during this ex parte meeting had been "flushed out" during Dr. Beurlot's deposition of June 19, 2003. Furthermore, Dr. Beurlot argued that Coutee waived the physician-patient privilege by placing his physical condition and/or injuries at issue in the lawsuit against Global. Also, Dr. Beurlot pointed out that Coutee had signed a medical authorization form at the time of their one and only medical appointment.
On October 19, 2005, a trial was conducted regarding Coutee's lawsuit against Dr. Beurlot. On November 30, 2005, the trial court found that Dr. Beurlot had "violated his obligation to keep records and information regarding a patient confidential" and awarded Coutee twenty thousand dollars ($20,000) in damages for emotional distress.[2]
On November 15, 2006, in a 2-to-1 decision, the appellate court affirmed the trial court's decision, while reducing the award of damages to ten thousand dollars ($10,000.00). In its opinion, the Third Circuit found that Dr. Beurlot had engaged in unauthorized, ex parte communications with Global, which communications violated the physician-patient privilege contained in La. R.S. 13:1374 and La.Code Evid. art. 510. The court of appeal further found that Coutee had failed to prove his claims of invasion of privacy and intentional infliction of emotional distress, but that he had suffered emotional damages due to Dr. Beurlot's testimony at trial. The dissenting judge stated that the statutes *307 quoted by the majority created only a testimonial and discovery privilege which did not establish a basis for recovery in the case.
In light of the appellate court's majority decision, Dr. Beurlot sought review from this Court, and we granted his writ application.[3]

STANDARD OF REVIEW
The law applicable to the manifest error standard of review was recently discussed in Detraz v. Lee, XXXX-XXXX (La.1/17/07), 950 So.2d 557. In Detraz, we stated:
Louisiana courts of appeal apply the manifest error standard of review in civil cases. Under the manifest error standard, a factual finding cannot be set aside unless the appellate court finds that the trier of fact's determination is manifestly erroneous or clearly wrong. In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.
The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong, even if the reviewing court would have decided the case differently.
Detraz v. Lee, XXXX-XXXX (La.1/17/07), 950 So.2d 561.

LAW AND DISCUSSION
In his petition, Coutee claimed that he suffered damages due to Dr. Beurlot's unauthorized ex parte communication, and particularized his claims as follows: invasion of privacy, interference with right of privacy, breach of the physician-patient privilege, causing a deleterious effect on his ability to develop his injuries and damages, intentional infliction of emotional distress, and negligence. Coutee claimed his damages consisted of mental anguish, discomfiture, humiliation, anxiety, and emotional upset (past, present, and future).
For each of these claims (as well as for any other claim that he could have possibly made), Coutee had the burden of proving that the injuries claimed (damages) were caused by the act or omission of the defendant (causation). If Coutee failed to prove either of these elements by a preponderance of the evidence, his claim failed. See, e.g., Costello v. Hardy, XXXX-XXXX (La.1/21/04), 864 So.2d 129, 140.
Dr. Beurlot met with Global's counsel; received new information regarding Coutee's actual work performance level; gave Global's counsel a new, different opinion as to Coutee's expected work performance level; and then testified at trial as to his new opinion of Coutee's expected work performance level. Arguably, the new opinion given to Global's counsel was a "privileged communication" protected by the physician-patient privilege; however, neither the meeting nor the receipt of the new information in themselves were in derogation of the privilege. The privilege is designed to keep a physician from divulging information concerning a patient, not to prevent him from receiving information relating to a patient.
For instance, had Global's attorney met with Dr. Beurlot, given him the new information, *308 and told him that they would discuss the matter at trial, there would clearly have been no violation of the physician-patient privilege. Had Global's attorney met with Dr. Beurlot, given him the new information, asked Dr. Beurlot for an opinion, and been told by Dr. Beurlot that he would receive his opinion at trial, there would likewise have been no violation of any privilege.
At trial, Coutee complained only that Dr. Beurlot's testimony during the original trial of his maritime action was different from that adduced at Dr. Beurlot's original deposition and that Dr. Beurlot "lied" about him during his trial testimony, but not that Dr. Beurlot gave a different opinion to opposing counsel during the ex parte meeting:
Q When was the next time you had an opportunity to see Dr. Beurlot?
A When was the next time I seen Dr. Beurlot? That was the last time I seen him. I didn't see him no more after that until court.
* * *
Q Were you in the courtroom when Dr. Beurlot testified?
A Yes sir.
Q O.k., in your mind was there any difference in what he told you after his examination and what he said on the stand?
A He changed his words around.
Q Tell me how he changed his words around Delton
A He told me a different thing in a room at his office than he said on the stand that I could go back off shore at a different level but that is how he changed it around to me. The way I understood it.
Q What else did he have to say?
A He, I can't recall what else he said that day.
Q Did he talk about whether you were being truthful or not?
A Yes sir he done that.
Q What did he tell you ?
A He said, and the way, he said on the stand that I was kind of lying about my symptoms when I got hurt.
Q How did you fell about that?
A Like I was nobody. Like I didn't mean nothing and the way I was brought up when you say some to somebody and it is privileged it is going to stay there.
* * *
Q Now you stayed for the whole trial didn't you Delton?
A Yes sir.
Q How did you feel after the trial over what Dr. Beurlot had told you or had said on the stand?
A Upset.
Q Why were you upset Delton?
A Cause of what he said on the stand and what he told me different.
R. at 954-955.
Coutee's wife testified that Coutee was upset that Dr. Beurlot testified that Coutee had "lied" about his injuries, and that Coutee no longer trusted doctors as a result of Dr. Beurlot's testimony.
Q You were present in the courtroom at the time that Dr. Beurlot testified?
A Yes sir.
Q Delton was there with you?
A On [sic] yes sir.
Q Did Delton at any time express to you his feelings about what Dr. Beurlot had to say while on the stand?
A Yes sir.

*309 Q What did he say?
A He dropped his head and I leaned in and whispered quietly what was wrong. I asked him what was wrong and he said I can't believe he is lying on me. And I said don't worry about it, just let it go. He said he is lying and he got very angry and I told him just hang in there.
Q Had Delton, to your knowledge, at any time prior to hearing Dr. Beurlot testify realize that Dr. Beurlot was accusing him of intentionally magnifying his symptoms?
* * *
A No, no.
Q Have you and Delton, has Delton spoke to you at any time subsequent to the trial itself about his feelings about Dr. Beurlot?
A Oh yeah.
Q Tell us about that.
A In response to me asking him to please go see a doctor again, see what we can do for his stomach burning his response is why go, one doctor has lied, there is no reason to see any more. He is angry with this. I have tried to convince him to let the anger go but he just has a hard time handling somebody lying on him. He can't cope with it. It, it is nerve racking for me cause I don't know what else to say or help him get past it, he can't.
R. at 972-973.
None of this "emotional damage" is due to Dr. Beurlot's giving of an arguably privileged new opinion during the meeting with Global's counsel  it is, instead, a result of Dr. Beurlot's giving of a clearly unprivileged new opinion at trial, after having received new information as to Coutee's actual work performance level, the receipt of which, as discussed earlier, is not covered by the privilege. Further, neither Coutee nor his wife were aware that Dr. Beurlot had changed his opinion due to the receipt of Coutee's actual work history until Dr. Beurlot testified at trial, at which time, they say, Coutee's emotional distress began.
It is apparent from his testimony that any emotional distress that Coutee may have suffered was caused by Dr. Beurlot's testimony at trial, which is clearly not privileged, rather than by the ex parte meeting between Dr. Beurlot and Global. Further, the damages he claims are those that are the result of the inherent characteristics of the adversarial nature of trial-in every trial a party must expect that, at some point, someone will dispute what he or she says or claims. Therefore, most, if not all, litigants who lose at trial suffer some form of mental anguish or emotional distress.
We find that the damages that Coutee complains of were not caused by the ex parte communication between Dr. Beurlot and Global's attorney, which is the only act or omission arguably a violation of the physician-patient privilege. In addition, we find that Coutee failed to prove any damage which resulted from that alleged act or omission.
Because we have determined that the plaintiff failed to prove two necessary elements, causation and damages, of any claim that he might have made against Dr. Beurlot, we find it unnecessary to discuss whether or not Dr. Beurlot's giving of a new, different opinion at the ex parte meeting constituted a violation of the doctor-patient privilege, or whether a violation of the discovery statutes constitutes a compensable tort.

*310 CONCLUSION
For the reasons set out above, we reverse the decisions of the lower courts.
REVERSED
CALOGERO, C.J., concurs.
KIMBALL and WEIMER, JJ., concur in the result and assign reasons.
JOHNSON, J., dissents.
VICTORY and KNOLL, JJ., concur in the result.
KIMBALL, Justice, concurring in result.
While I concur with the result of the majority's opinion, I write separately to express my belief that the majority's reasoning has strayed from resolution of the original legal issue presented: whether plaintiff Coutee (hereinafter "Coutee") has a cause of action against defendant Dr. Beurlot (hereinafter "Dr. Beurlot") "for emotional damage purportedly sustained as a result of a breach of the physician-patient privilege." (Maj. Opinion at 305). For the following reasons, I find that he does not.
The existence of a physician-patient relationship between Coutee and Dr. Beurlot at the time of the events giving rise to this litigation is readily apparent. Coutee was a "patient"[1] of Dr. Buerlot's, a "healthcare provider."[2] In the absence of a valid waiver, therefore, Coutee may have had a privilege to prevent Dr. Buerlot "from disclosing [any] confidential communication made for the purpose of advice, diagnosis or treatment of his health condition. . . ." La. C.E. art. 510(B)(1).[3] What has been overlooked, however, is that even if Dr. Beurlot violated an existing "testimonial privilege," such a violation "does not constitute a compensable offense under the Civil Code." Sanders v. Spector, 95-2740, p. 5 (La.App. 4 Cir. 4/24/96); 673 So.2d 1176, 1179. Rather, violations of the physician-patient privilege are governed by the Louisiana Code of Evidence, which provides attorney sanctions as a remedy.[4] Testimonial privileges, in and of themselves, "are generally considered to be procedural in nature and do not . . . create causes of action or other substantive rights on the part of the holders of the privileges." Jackson v. Dendy, 93-0905, p. 6 (La.App. 1 Cir. 6/24/94); 638 So.2d 1182, 1185. Therefore, in my view, Coutee has *311 been unable to support his claims for invasion of privacy or intentional infliction of emotional distress. Given Coutee's failure to assert breach of contract or any other cause of action, this leaves only Coutee's tenuous claims of "mental anguish" to support any recovery.[5] As these alleged damages are unaccompanied by physical injury and are insufficient to show an "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious[,]" Moresi v. State Through Department of Wildlife and Fisheries, 567 So.2d 1081, 1096 (La.1990), even recovery for negligent infliction of emotional distress is inappropriate.
Since Coutee has been unable to prove the elements of any compensable cause of action, I believe that the majority has reached the correct result.
WEIMER, J., concurring.
I concur in the result. I would reverse because the plaintiff inadequately established the damages element of his claim.
As noted by the court of appeal, "[T]he fact that a person's work status is that of heavy manual labor as opposed to medium duty is hardly the type of embarrassing, private facts necessary to recover for an invasion of privacy." Coutee v. Beurlot, 2006-569, p. 12 (La.App. 3 Cir. 11/15/06), 943 So.2d 637, 647. I agree, and also believe this is not the type of information which would result in legally compensable damages under any theory of recovery.
Coutee's claim of emotional anguish was couched in terms of his distress over being "called a liar" during the maritime trial, in addition to general anguish over his distrust of physicians. Coutee's real anguish lies in the fact that the information discussed during the ex parte meeting revealed the nature of his work capability (i.e., Coutee could perform heavy labor). Significant, however, is the deposition testimony of Dr. Berlot taken prior to trial and prior to the ex parte meeting. In deposition, Dr. Beurlot testified he found numerous intentional inconsistencies while examining Coutee, leading to a belief Coutee had magnified his symptoms.
Thus, Coutee failed to satisfactorily prove any legally compensable damages.
NOTES
[1] On appeal, the appellate court reversed the trial court's judgment and awarded Coutee general damages; however, on February 22, 2006, this Court reversed the appellate court and reinstated the trial court's judgment. See Coutee v. Global Marine Drilling Company, 05-0756 (La.2/22/06); 924 So.2d 112.
[2] R. at 912-13.
[3] Coutee v. Beurlot, 06-2943 (La.3/16/07); 952 So.2d 683.
[1] La. C.E. art. 510(A)(1) provides that a "`[p]atient' is a person who consults or is examined or interviewed by another for the purpose of receiving advice, diagnosis, or treatment in regard to that person's health."
[2] La. C.E. art. 510(A)(2) defines a "health care provider" to include a "physician." A physician is defined as "a person licensed to practice medicine in any state or nation." La. C.E. art. 510(A)(3).
[3] La. C.E. art. 510(B)(1) states in full:

General rule of privilege in civil proceedings. In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives.
[4] La. R.S. 13:3734(B): "In noncriminal proceedings, testimonial privileges, exceptions, and waiver with respect to communications between a health care provider and his patient are governed by the Louisiana Code of Evidence." Article 510(G) of the Code of Evidence provides that "[a]ny attorney who violates a provision of this Article shall be subject to sanctions by the court." This article therefore "makes it clear that any sanctions for such a violation should be against the attorneys in the case, and not against the litigants. . . ." Hortman v. Louisiana Steel, 96-1433, p. 6 (La.App. 1 Cir. 6/20/97); 696 So.2d 625, 628; writ denied 97-1919 (La.11/7/97); 703 So.2d 1268.
[5] The Court of Appeal properly found that Coutee failed to put forth evidence for essential elements of both his intentional infliction of emotional distress and invasion of privacy claims. See Coutee v. Beurlot, 06-569, p. 11-12 (La.App. 3 Cir. 11/15/06); 943 So.2d 637, 647. The court erred, however, in holding that Coutee had claimed actionable damages because he felt he had been "called a liar," was "upset," had developed "a general distrust of physicians," and "felt psychological effects" as a result of Dr. Beurlot's communications with a third party. See id. at p. 13, 943 So.2d at 647.