# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 07-1589

**COLLEEN WOOD**

**VERSUS**

**AMERICAN NATIONAL PROPERTY & CASUALTY INS. CO., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2003-867
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Marc T. Amy, Judges.

**THIBODEAUX, Chief Judge, dissents in part and assigns written reasons.**

**AFFIRMED.**

**Roger G. Burgess**
**Erin McCall Alley**
**Baggett, McCall, Burgess, Watson & Gaughan**
**3006 Country Club Road**
**P.O. Drawer 7820**
**Lake Charles, LA 70606**
**(337) 478-8888**
**Counsel for Plaintiff/Appellee:**
**Colleen Wood**

**John Michael Veron**
**Bice, Palermo & Veron**
**P. O. Box 2125**
**Lake Charles, LA 70602-2125**
**(337) 310-1600**
**Counsel for Defendant/Appellant:**
**Chuc Th Song Tran**

**James Ray Morris**
**Fraser, Morris & Wheeler, L.L.P.**
**P. O. Box 4886**
**Lake Charles, LA 70605**
**(337) 478-8595**
**Counsel for Defendants/Appellants:**
**American National Property & Casualty Ins. Co.**
**Chuc Th Song Tran**

**H. Bradford Calvit**
**Provosty, Sadler, Delaunay, Fiorenza, & Sobel**
**P. O. Drawer 1971**
**Alexandria, LA 71309**
**(318) 445-3631**
**Counsel for Defendant/Appellant:**
**American National Property &Casualty Ins. Co.**

**Russell Joseph Stutes, Jr.**
**P. Jody Lavergne**
**Stutes, Fontenot, Lavergne & Lutz.**
**713 Kirby St.**
**Lake Charles, LA 70601**
**(337) 433-0022**
**Counsel for Defendant/Appellant:**
**Chuc Th Song Tran**

**David Laine Morgan**
**John J. Simpson**
**Stockwell, Sievert, Viccellio, Clement & Shaddock**
**P.O. Box 2900**
**Lake Charles, LA 70602**
**(337) 436-9491**
**Counsel for Intervenor/Appellee:**
**State Farm Mutual Auto Ins. Co.**

**SAUNDERS, Judge.**

**FACTS AND PROCEDURAL HISTORY:**

The plaintiff, Ms. Colleen Wood (hereinafter "Ms. Wood"), was injured in an automobile accident on March 5, 2002. Ms. Wood argued that the accident caused her to suffer a herniated disc, which was abutting her spinal cord. Ms. Wood's neurosurgeon testified that if Ms. Wood's spondylolisthesis exceeded a certain amount, she would need to undergo a second surgery. An economist, Dr. Kenneth McCoin, testified that the present day cost of the surgery was $76,883 and that Ms. Wood would incur $13,200/year in medical expenses in the years leading up to the second surgery. Furthermore, two different experts testified that Ms. Wood would suffer a loss in future earning capacity of either $450,262 or $586,063.

Dr. Wolf, Ms. Wood's neurosurgeon, testified that he expected Ms. Wood to make an 80% to 100% recovery following the second surgery. However, Dr. Wolf went on to state that, even with a full recovery, Ms. Wood would continue to suffer from the following limitations: 1) standing and/or walking less than 2 hours in an 8 hour period; 2) lifting of 20 pounds or less either frequently or occasionally; 3) sitting for less than 6 hours in an 8 hour period; 4) climbing, crawling or stooping were never allowed; 5) pushing and pulling limited in the upper extremities; 6) reaching, handling and fingering were limited to occasional; 7) she had environmental limitations regarding temperature extremes, humidity/wetness and hazards (machinery, heights. . .). Dr. Lopez, on the other hand, testified that, should Ms. Wood make an 80% to 100% recovery from the second surgery, as expected by her neurosurgeon, she should be able to return to work.

Ms. Wood brought suit in the Fourteenth Judicial District Court, Parish of Calcasieu, against defendant American National Property and Casualty Co.

(hereinafter "ANPC"), among others. There was no issue regarding liability, as liability was stipulated prior to trial.

Prior to trial, ANPC's counsel, Mr. Jim Morris (hereinafter "Mr. Morris"), engaged in an *ex parte* meeting with one of Ms. Wood's treating physicians, Dr. Kevin Cox (hereinafter "Dr. Cox"), purportedly to gain clarification on the doctor's handwriting. This *ex parte* communication took place at Dr. Cox's home, outside the presence and without prior knowledge of opposing counsel. Although Mr. Morris claims that he attempted to notify Ms. Wood's counsel of the meeting, no such notice was received prior to the meeting. During this meeting, Dr. Cox redacted his notes and a modified copy was later hand delivered to opposing counsel.

Ms. Wood's counsel thereafter filed a motion *in limine* seeking to prevent ANPC from introducing evidence of Dr. Cox's prior treatment of Ms. Wood—aside from the purpose of impeaching Ms. Wood—which was granted. The jury ultimately found for Ms. Wood, awarding her: $123,760.96 in past medical expenses, $150,000.00 in future medical expenses, $75,000 in physical pain and suffering (past and future), $75,000 in mental pain and suffering (past and future), $100,000.00 in disability, $52,000.00 in household services, $100,000.00 in loss of enjoyment of life (past and future), $52,981.00 in past lost wages, and $125,000.00 in loss of future wages. From the aforementioned judgment, the following three awards are contested: $150,000.00 in future medical expenses, $100,000.00 in disability, and $125,000.00 in loss of future earning capacity.

ANPC now appeals, charging two assignments of error.

**ASSIGNMENTS OF ERROR:**

1.    Did the jury abuse its discretion by limiting ANPC's use of evidence redacted

during *ex parte* communications between ANPC's counsel and opposing witness, Dr. Cox?

2.    Did the jury abuse its discretion in awarding Ms. Wood $150,000.00 in future medical expenses, $100,000.00 in disability, and $125,000.00 in lost future earning capacity?

**ISSUE #1:**

ANPC first argues that the trial court committed error in forbidding ANPC from mentioning at trial the previous medical treatment of Dr. Cox. We disagree.

"The trial court is accorded vast discretion concerning the admission of evidence, and its decision will not be reversed on appeal absent an abuse of that discretion." *McIntosh v. McElveen*, 04-1041, p. 9-10 (La.App. 3 Cir. 2/2/05), pp. 9-10, 893 So.2d 986, 994, *writ denied*, 05-528 (La. 4/29/05), 901 So.2d 1069; *see also Maddox v. Omni Drilling Corp.*, 96-01673 (La. App. 3 Cir. 8/6/97), 698 So.2d 1022, *writ denied*, 97-2766, (La. 1/30/98), 709 So.2d 706.

Louisiana Code of Evidence Article 510 provides in pertinent part:

> **B. (1) General rule of privilege in civil proceedings.** In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives.
> **(2) Exceptions.** There is no privilege under this Article in a noncriminal proceeding as to a communication:
> (a) When the communication relates to the health condition of a patient who brings or asserts a personal injury claim in a judicial or worker's compensation proceeding.
> . . . .
> (c) When the communication is relevant to an issue of the health condition of the patient in any proceeding in which the patient is a party and relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which a party deriving his right from the patient relies on the patient's health condition as an element of his claim or defense.

3

. . . .

  **E. Waiver.** The exceptions to the privilege set forth in Paragraph B(2) shall constitute a waiver of the privilege only as to testimony at trial or to discovery of the privileged communication by one of the discovery methods authorized by Code of Civil Procedure Article 1421 *et seq.*, or pursuant to R.S. 40:1299.96 or R.S. 13:3715.1.

Further, La.Code Civ.P. art. 1421 provides:

  Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; request for release of medical records; and requests for admission. Unless the court orders otherwise under Article 1426, the frequency of use of these methods is not limited.

This court was previously faced with a similar scenario in *Coutee v. Global Marine Drilling Co.*, 04-1293 (La.App. 3 Cir. 2/16/05), 895 So.2d 631, *rev'd on other grounds*, 05-0756 (La. 2/22/06), 924 So.2d 112.[1] There, in evaluating a doctor's *ex parte* communication regarding a patient's privileged medical information, we reasoned that, "the exception to the privilege can only be effectuated through testimony at trial or by the use of proper discovery methods." *Id.* at 641. Thus, Ms. Wood only waived her patient's privilege as to her medical records with Dr. Cox in the limited context of "testimony at trial or [through] the use of proper discovery methods." *Id.* Notably, *ex parte* communications, such as Mr. Morris', are "clearly not 'testimony at trial' and [were] not...[obtained] through proper discovery methods," as defined in La.Code Civ.P. art. 1421. *Id.* at 642.

This court ruled that a trial court should not admit, "the ill-gotten gains of

---

[1] Whereas the supreme court reversed our affirmation of the trial court's awarding the plaintiff in *Coutee v. Beurlot* 06-2943 (La. 9/5/07), 964 So.2d 304 damages for the ex parte disclosure of privileged medical information in question there, it did so for lack of evidence regarding causation: "We find that the damages that Coutee complains of were *not caused* by the ex parte communication . . . ." *Coutee*, 964 So.2d at 309 (emphasis added). Because our supreme court did not discuss the waiver analysis contained in our discussion of that case, the validity of such analysis remains unimpeached.

defense counsel's illicit *ex parte* communication[.]" *Boutte v. Winn-Dixie Louisiana, Inc.*, 95-1123, p. 2 (La.App. 3 Cir. 4/17/96), 674 So.2d 299, 301. Furthermore, we ruled that, "violations of La.Code Evid. Art. 510 can result not only in sanctions against the attorney violator, but also. . .the elimination of testimonial evidence if the violation rises to the level of tainting the integrity of the trial." *Coutee* 943 So.2d 637 at 642 - 643. Therefore, it was proper for the trial court, in its vast discretion concerning the admission of evidence, to limit the use of such evidence tainted by illicit *ex parte* communication.

**ISSUE #2:**

ANPC next argues that the trial court erred by awarding Ms. Wood $150,000.00 in future medical expenses, $100,000 in disability, and $125,000 in lost future earning capacity, asserting that these damages are "speculative" and "grossly excessive." We disagree.

It is well established that when rendering a judgment on quantum based on the merits, this court has a constitutional duty to review the law and facts and determine whether the trier of fact abused the "much discretion" that the law accords it in awarding damages. La.Const. art. 5, § 10(B)**;** La.Civ.Code art. 1999**; ;** *Ard v. Samedan Oil Corp.,* 483 So.2d 925 (La.1986)**;** *Carollo v. Wilson,* 353 So.2d 249 (La.1977)**;** *Temple v. Liberty Mut. Ins. Co.,* 330 So.2d 891 (La.1976); *Williams v. Exxon Corporation,* 541 So.2d 910, 918 (La.App. 1st Cir. 1989)**.** In the absence of manifest error, a court of appeal may not set aside a trial court's finding of fact. *Ryan v. Zurich American Ins. Co., et. al.* 07-2312 (La.7/1/08), 988 So.2d 214.

"The jury's determination of the amount, if any, of an award of damages. . .is a finding of fact." Ryan, 988 So.2d 219. In analyzing the jury's findings of fact, an

appellate court must review the record in its entirety and determine (1) whether a reasonable factual basis exists for the finding, and (2) whether, based on the record, the fact finder is clearly wrong or manifestly erroneous. Id; See e.g. Basco v. Liberty Mut. Ins. Co., 05-0143 (La.App. 3 Cir. 8/17/05), 909 So.2d 660; Cormier v. Colston, 05-507 (La.App. 3 Cir. 12/30/05), 918 So.2d 541; Rosell v. ESCO 549 So.2d 840 (La.1989). Where there are two permissible views of the evidence, the court of appeal may not reverse and substitute its own discretion, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell, 549 So.2d 840.. Thus, we will review the record for each category of contested damages to determine whether a reasonable factual basis exists and whether the jury was manifestly erroneous.

**FUTURE MEDICAL EXPENSES:**

This court previously addressed the issue of future medical expenses in Cormier, 918 So.2d 541. There, we explained:

> Medical expenses are a component of special damages. *Thibeaux v. Trotter*, 04-482 (La.App. 3 Cir. 9/29/04), 883 So.2d 1128, writ denied, 04-2692 (La.2/18/05), 896 So.2d 31. The plaintiff bears the burden of proving special damages by a preponderance of the evidence. *Iwamoto v. Wilcox*, 04-1592 (La.App. 3 Cir. 4/6/05), 900 So.2d 1047. In meeting her burden of proof on the issue of future medical expenses, the plaintiff must show that, more probably than not, these expenses will be incurred and must present medical testimony that they are indicated and the probable cost of these expenses. *Veazey v. State Farm Mut. Auto Ins.*, 587 So.2d 5 (La.App. 3 Cir.1991).

*Id*. at 547. Furthermore, an award of future medical expenses will not be made absent testimony that they are indicated and setting out their probable cost. *McGraw v. Orleans Parish School Bd.* 519 So.2d 847,850 (La.App. 4 Cir.1988), writ denied 520 So.2d 754. Thus, unless the record indicates that the trial court abused its discretion

6

in finding that the $150,000.00 award will more probably than not be incurred by Ms. Wood, the award must stand.

Here, we find that the record evidence justifies the reasonable conclusion that the $150,000.00 expense will more likely than not be incurred, and thus we find this argument to be without merit. Indeed, as ANPC points out in its own brief, Ms. Wood's treating neurosurgeon, Dr. Eric Wolf, testified that it is more probable than not that Ms. Wood would require another surgery, with an estimated cost of $76,883 plus $13,200/year in medical expenses for the years leading up to the surgery. Ms. Wood had testified that she intended to wait as long as she could before having the second surgery. In light of such evidence being contained in the record, we are loath to conclude that the trial court acted unreasonably in finding—in accordance with the opinion of an expert witness—that such surgery would more likely than not be required.

The jury's award encompasses the cost of the surgery and roughly five years of medical expenses incurred in the interim, based on Dr. McCoin's testimony as to the estimated costs for such services. Again, in light of such testimony, we do not find the $150,000.00 amount arrived at by the trial court to be an abuse of its discretion in determining damage awards. Thus, we find this assignment of error to be without merit with respect to future medical expenses.

**DISABILITY:**

Disability is a component of general damages. Bowie v. Young, 01-715 (La.App. 3 Cir. 3/20/02), 813 So.2d 562, writ denied, 02-1079 (La. 6/21/02), 819 So.2d 335. The supreme court discussed general damages in Andrus v. State Farm Mut. Auto. Ins. Co., 95-0801, p. 8 (La. 3/22/96), 670 So.2d 1206, 1210 (La.1996):

7

> Because discretion vested in the trial court is 'great,' and even vast, an appellate court should rarely disturb an award of general damages . . . It is only when the award is . . . beyond that which a reasonable trier of fact could assess . . . .that the appellate court should increase or reduce the award.

Thus, unless the record indicates that the trial court abused its vast discretion in awarding Ms. Wood $100,000.00 in disability, the award must stand.

Here, the record does not indicate that the trial court abused its discretion in awarding Ms. Wood $100,000.00 for her disability. At trial, Ms. Wood's expert in the field of vocational rehabilitation, Mr. Jeff Peterson, testified as to a litany of activities in which Ms. Wood cannot engage as a result of the accident, including the acts of lifting, pushing, pulling, or handling objects of a certain weight or bulkiness; sitting or not sitting for extended periods of time; or enduring extremes of temperature or humidity. Based on the sheer quantity of disabilities from which Ms. Wood now suffers, we cannot find that the trial court abused its discretion in awarding Ms. Wood $100,000.00 for disability, and thus we find this argument to be without merit.

**LOSS OF FUTURE EARNING CAPACITY**:

"Awards for loss of future income are inherently speculative, and are intrinsically insusceptible of being calculated with mathematical certainty. Thus, the courts must exercise sound judicial discretion in determining these awards, and render awards which are consistent with the record and which work an injustice on neither party." *Broussard v. Lafayette Ins. Co.* 08-116 (La.App. 3 Cir. 5/28/08), 984 So.2d 253, 253. The right of recovery being assumed, plaintiff in error cannot escape liability because the damages are difficult of exact ascertainment. *McCoy v.*

8

*Arkansas Natural Gas Co.* 143 So. 383, 385 (175 La. 487,496). Thus, unless the $125,000.00 awarded by the trial court is so unreasonably inconsistent with the record as to amount to an abuse of discretion, the award must stand.

Here, we do not find the award to be inconsistent with the record. "The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound." *Sportsman Store of Lake Charles, Inc. v. Sonitrol Sec. Systems of Calcasieu, Inc.*, 99-0201 (La.10/19/99), p. 6, 748 So.2d 417, 421 (citing *Lirette v. State Farm Ins. Co.*, 563 So.2d 850, 853 (La. 1990)). "'A fact finder may accept or reject the opinion expressed by an expert, in whole or in part.'" *Ryan v. Zurich American Insurance Company, et. al.* 2008 WL 2695914 (La.) 2007-2312 (La.7/1/08) (quoting *Green v. K-Mart*, 03-2495 (La.5/25/04), 874 So.2d 838,843). "Thus, reduced to its essentials the inquiry is whether, based on the totality of the record, the jury was manifestly erroneous in accepting the expert testimony presented by defendants over that presented by plaintiff." *Miller v. Clout*, 03-0091 (La. 10/21/03), 857 So.2d 458, 462.

There was conflicting testimony in this case. Dr. Wolf testified, "I would expect that [Ms. Wood] would make a full recovery, or at least an 80% recovery on average [following her second surgery]." However, Dr. Wolf went on to state that, even if Ms. Wood makes a 100% recovery from her second surgery, she will continue to have the same limitations listed above, with the exception that the lifting limitation would go from 10 pounds to 20 pounds. On the other hand, Dr. Lopez testified that, "If we're talking about eliminating 80% of the things I saw

9

when or that I interpreted when I evaluated her, yes, I think that she should be able to resume work activities."

It is clear that, in determining its award, the jury credited, to varying degrees, the testimony of experts on both sides. On the basis in the record, the jury was reasonable in awarding plaintiff $125,000, and this court finds no abuse of discretion.

**ANCILLARY ISSUE:**

Appellee raises one assignment of error in her brief filed in support of her answer, arguing that the jury committed manifest error in not awarding her at least $450,262 for lost future earning capacity. However, we do not find that the jury abused its discretion. We note that Dr. Lopez testified that Ms. Wood should be able to resume work activities after her surgery, and that, if the jury had accepted Dr. Lopez's testimony, Ms. Wood would not have been entitled to any damages for loss of future earning capacity. On the other hand, Dr. Wolf testified that, even if Ms. Wood enjoyed a successful recovery from a second surgery, all of the above-stated limitations would likely remain the same, save for a slight improvement in Ms. Wood's ability to lift objects. In light of the conflicting testimony of medical doctors, it is not manifestly erroneous for the jury to conclude that Ms. Wood would suffer some loss in future earning capacity. The jury awarded plaintiff several items of damages, and simply found that for loss of future earning capacity, the appropriate award was $125,000. Thus, we find this argument to be without merit.

We note further that Appellee, both in brief and at oral argument, pointed out that a witness for ANPC inappropriately testified as to Ms. Wood's ability to work.

10

Appellee contends that this inappropriate testimony was the basis for an error committed by the jury in making its award of loss of future earning capacity. However, this court also finds in the record that the trial judge instructed the jury to disregard the inappropriate testimony. We are unable to find that this sequence of events justifies a reversal of the finding made by the jury.. We affirm the jury based on the conflicting testimony of Dr. Lopez and Dr. Wolf.

**CONCLUSION:**

For the above-stated reasons, we affirm the decision of the trial court in all respects. All costs are to be taxed to the appellant, American National Property & Casualty Ins. Co..

**AFFIRMED.**

COLLEEN WOOD

VERSUS

AMERICAN NATIONAL PROPERTY & CASUALTY INS. CO., ET AL.


THIBODEAUX, Chief Judge, dissenting in part.


I dissent from the majority's affirmance of the jury award of $125,000.00 for loss of future earning capacity. The majority's reference to the testimony of Dr. Lopez is incomplete and somewhat misleading. In response to defendant's counsel's question about an 80 percent recovery from surgical intervention and the ability of the plaintiff to perform work following her recovery, Dr. Lopez testified:

> If she has -- well the first thing is to assume that the cause of her pain now is that condition that would require the fusion. If she's going to have 80 percent recovery from that, what's the eighty percent recovery? Is it going to be in the complaints of the neck and shoulders? Or is it going to be in the neuralgia? I find that to be a little bit complicated to try to extract what is it that she's going to be able to do. If we're talking about eliminating 80 percent of the things that I saw when or that I interpreted when I evaluated her, yes, I think that she should be able to resume work activities.

Clearly, Dr. Lopez's opinion was, at best, ambiguous. The above quoted testimony illustrates that even Dr. Lopez found it "a little bit complicated to try to extract what is it that she's going to be able to do." In other words, Dr. Lopez could not say what Ms. Wood would or would not be able to do following the assumption of an 80 percent successful recovery. Dr. Wolf, the plaintiff's treating physician, was steadfast

in his response that the plaintiff would have severe physical and occupational limitations.

Further, we must remember that Dr. Wolf was the plaintiff's treating physician. Dr. Lopez, on the other hand, examined the medical records supplied to him and physically examined Ms. Wood for approximately 15 to 20 minutes, according to his own testimony. Our jurisprudence is clear that the testimony of a treating physician is entitled to more weight than that of a non-treating physician, particularly one who is employed for the purposes of litigation, like Dr. Lopez. *Winch v. Double M, Inc.*, 99-1793 (La.App. 3 Cir. 4/5/00), 764 So.2d 1055.

I would amend the jury verdict to increase the award for loss of earning capacity to the lowest reasonable amount under the circumstances, $450,262.00.

For the foregoing reasons, I respectfully dissent.