STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1082


GARNET THIBODEAUX

VERSUS

ELIZABETH WILLIAMSON, ET AL.


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2007-0421
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir,
Jimmie C. Peters, Marc T. Amy, and Michael G. Sullivan, Judges.


**Thibodeaux, Chief Judge, dissents and assigns written reasons.**
**Peters, J., dissents for the reasons assigned by Chief Judge Thibodeaux.**


**AFFIRMED.**


Nelson W. Wagar, III
Chopin, Wagar, Richard & Kutcher, LLP
3850 N. Causeway Blvd., Suite 900
Metairie, Louisiana 70002
(504) 830-3838
Counsel for Plaintiff/Appellant:
    Garnet Thibodeaux

**Gretchen Heider Mayard**
**Katherine Paine Martin**
**Katherine P. Martin, A.P.L.C.**
**Post Office Box 81338**
**Lafayette, Louisiana 70598-1338**
**(337) 291-2440**
**Counsel for Defendant/Appellee:**
  **State Farm Mutual Automobile Insurance Company (as UM Carrier)**

**Timothy A. Maragos**
**John E. Ortego & Associates**
**Post Office Box 81428**
**Lafayette, Louisiana 70598**
**(337) 988-7240**
**Counsel for Defendants/Appellees:**
  **State Farm Mutual Automobile Insurance Company as Liability Insurer of**
  **Elizabeth Williamson**

**SULLIVAN, Judge.**

Plaintiff appeals a jury verdict, urging that it is inadequate in light of her injuries and future medical treatment she will have to undergo. For the following reasons, we affirm.

*Facts*

Garnet Thibodeaux was injured in a rear-end collision with Elizabeth Williamson on May 8, 2006. She sued Ms. Williamson and her insurer, State Farm Mutual Automobile Insurance Company, to recover damages for a neck injury she suffered in the accident. She also sued State Farm Mutual Automobile Insurance Company in its capacity as her uninsured/underinsured insurer. Defendants stipulated to liability for the accident, and Ms. Williamson was dismissed from the suit.

The matter was tried to a jury on February 28-29, 2008. The jury awarded her the following damages:

| | | |
|---|---|---|
| a) | Past Pain, Suffering, and Mental Anguish | $15,000.00 |
| b) | Future Pain, Suffering, and Mental Anguish | $ 5,000.00 |
| c) | Permanent Physical Impairment and/or Disability | $ 0.00 |
| d) | Scarring and Disfigurement due to Surgery | $ 0.00 |
| e) | Loss of Enjoyment of Life | $ 0.00 |
| f) | Past Medical Expenses | $10,869.50 |
| g) | Future Medical Expenses | $ 8,000.00 |
| | TOTAL DAMAGES | $38,869.50 |

After trial, Ms. Thibodeaux filed a Motion for Judgment Notwithstanding the Verdict, seeking an increase in damages, which the trial court denied. She appealed the jury's verdict, assigning error with the jury's damage award. She argues that the

award "was grossly inadequate given the undisputed evidence of a herniated cervical disc with nerve root and spinal cord compression and that this medical condition" was caused by the May 6, 2006 accident. She further assigns as error the trial court's denial of her Motion for Judgment Notwithstanding the Verdict.

## Standard of Review

The jury's damage awards are findings of fact. *Ryan v. Zurich Am. Ins. Co.*, 07-2312 (La. 7/1/08), 988 So.2d 214; La.Civ.Code art. 2324.1. Appellate courts review factual determinations of the jury pursuant to the manifest error—clearly wrong standard, which prohibits setting aside a jury's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Driscoll v. Stucker*, 04-589 (La. 1/19/05), 893 So.2d 32. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

## Discussion

### Ms. Thibodeaux's Medical History

Ms. Thibodeaux was injured in two incidents prior to the May 2006 accident. In 2002, she was involved in an automobile accident. She injured her neck in that accident also and was treated by her family physician, Dr. Brian Granger. On April 1, 2006, Ms. Thibodeaux fell while refereeing a soccer game and broke her right wrist. She was treated by Dr. Michael Duval, an orthopedist, for her wrist injury. Dr. Duval performed a closed reduction on her wrist and prescribed physical therapy. The course of physical therapy he prescribed had not been completed when Ms. Thibodeaux was involved in the accident at issue here, and Dr. Duval reevaluated her at the request of her therapist to ensure it was okay for her to continue her

2

physical therapy regime. She thereafter completed physical therapy without further incident.

After her 2002 accident, Ms. Thibodeaux had been treated by Dr. Granger for headaches and neck and shoulder pain. Dr. Granger prescribed medication and a course of physical therapy. Ms. Thibodeaux completed therapy as prescribed and, on October 27, 2004, was released by her therapist with a home program of exercises and stretches. Her complaints of pain to her physical therapist included headaches, right neck pain, left neck pain, and upper left back pain and tightness. The therapist noted on more than one occasion that her various complaints included "significant tightness and spasm in her posterior-lateral cervical musculature, especially the left side" with a "displayed prominence over her lower cervical and upper thoracic vertebrae" and noted on April 8, 2003, that "[s]he had a slight weakness in her upper extremities and cervical area muscles." In February 2005, Ms. Thibodeaux complained to Dr. Granger of throbbing pain in her left upper arm and left shoulder blade. Her last visit to Dr. Granger before her May 2006 accident was in October 2005. At that time, she complained of headache radiating to her neck. Dr. Granger noted she had spasm on the right side of her neck and prescribed pain medication.

Ms. Thibodeaux next saw Dr. Granger on June 6, 2006. Dr. Granger's notes do not reflect any complaints by Ms. Thibodeaux of neck pain on that visit. On July 14, 2006, Ms. Thibodeaux saw Dr. Granger complaining of a sinus infection. She also complained of neck pain that went down into her shoulders, which she related to her May 2006 accident. She informed him she had been treated by a doctor in New Iberia with no relief. On examination, Dr. Granger noted decreased range of

3

motion with rotation, flexion, and extension. He prescribed pain medication and physical therapy.

On August 22, 2006, Ms. Thibodeaux returned, complaining of neck pain, which radiated down into her right arm, and numbness and tingling in her right arm. On examination, she had pain on the right side of her neck with decreased rotation with spasm in her right paraspinous muscles. Dr. Granger prescribed a pain reliever, a muscle relaxer, and continued physical therapy. He also ordered an MRI of Ms. Thibodeaux's cervical spine. The MRI, which was performed on August 24, 2006, revealed "a significant central right lateral focal disc herniation with probable right C6 nerve root compromise."

Ms. Thibodeaux's next visit to Dr. Granger was December 7, 2006. She complained of low grade fever, cough, sore throat, and neck and shoulder pain. She did not see Dr. Granger again until October 1, 2007, when she complained of neck pain and headache in the left temporal area. She indicated that her neck pain had been constant since the previous weekend and radiated to her left temple and down into her left arm. Dr. Granger's examination revealed less strength in her left arm and a decreased range of motion in her neck due to pain in all directions. Dr. Granger ordered another cervical MRI and referred her to a neurosurgeon because of these complaints. The results of this second MRI were not introduced into evidence, and she had not seen the neurosurgeon before trial. The last entry in Ms. Thibodeaux's patient record was a call to Dr. Granger on February 7, 2008, during which she complained of headaches and neck pain; he prescribed pain medication and muscle relaxers.

Ms. Thibodeaux's physical therapist's notes indicate that she began therapy on August 1, 2006, at which time she complained of neck pain and muscle tightness. During the course of therapy, she complained of neck and shoulder pain, which she initially indicated ranged from six to eight on a scale of ten. Her records indicate that her last physical therapy session was on February 8, 2007, at which time she rated her pain as zero; she was discharged and instructed to continue physical therapy with a home exercise program.

Ms. Thibodeaux testified that since the May 2006 accident there have been few days on which she was pain free. She explained that some days are better than others and that she cannot determine what makes the pain worse. Her pain is worse in the morning; she has a burning sensation and gets headaches primarily on the left side that go down to the middle of her left arm. She has some right arm pain but not as much as the left arm. She has a burning sensation in her neck every morning that is usually in the area of five to seven or eight on a scale of ten. She alternates using Tylenol or ibuprofen to relieve her pain and uses muscle relaxers only when she can no longer tolerate the pain, which is approximately every two to three weeks. Ms. Thibodeaux testified that she has not allowed the pain to stop her from her usual activities. She has not missed a day of work since the accident; she has continued refereeing soccer; and she has traveled for leisure. She did testify, however, that the pain has limited some of her physical abilities like reaching overhead, which is sometimes required when she referees soccer, and picking up heavy things.

### *Ms. Thibodeaux's Claims*

Ms. Thibodeaux contends that the jury erred in failing to award her adequate damages for the injuries she suffered in the May 8, 2006 accident. She seeks an

increase in damages for pain and suffering and an award for medical expenses associated with surgery for her herniated cervical disc. She argues that her injuries from the 2002 accident had completely resolved when the 2006 accident occurred, that her fall over the soccer player in April 2006 caused only a broken wrist, that her injuries from the 2006 accident caused her significant pain and suffering which were not resolved when this case was tried, and that the 2006 accident caused a cervical herniation which will require surgery in the future. To the contrary, State Farm urges that the jury's verdict is reasonable in light of the medical evidence and Ms. Thibodeaux's actions prior to trial.

Ms. Thibodeaux had the burden of proving her claims by a preponderance of the evidence. She had to prove that the 2006 automobile accident caused injuries and what amount of damages would adequately compensate her for her damages. *Coutee v. Beurlot*, 06-2943 (La. 9/5/07), 964 So.2d 304. With regard to surgery, she had to prove with medical testimony that the 2006 automobile accident more probably than not caused a condition which requires surgery and the cost of the surgery; she also had to prove that more probably than not she will have the surgery in the future. *Basco v. Liberty Mut. Ins. Co.*, 05-143 (La.App. 3 Cir. 8/17/05), 909 So.2d 660.

Ms. Thibodeaux relied upon the testimony of Dr. Granger and Dr. Duval to prove that the 2006 accident caused the right-sided cervical herniation and that the herniation would require her to undergo surgery in the future. Dr. Granger is the only doctor Ms. Thibodeaux consulted for her head, neck, and arm pain. He testified that her cervical herniation was more probably than not caused by the 2006 accident because, while she did have head and neck pain before the 2006 accident, she did not have any complaints of right-sided neck pain radiating down into her arm before that

6

accident. However, on cross-examination, he admitted that he could not say with certainty the 2006 accident caused the herniation and agreed the herniation could have been caused by Ms. Thibodeaux's fall when she tripped over a soccer player. Dr. Granger further testified that Ms. Thibodeaux's complaints of left-sided pain and weakness were not related to the right-sided herniation. On redirect examination, Dr. Granger testified that he did not believe Ms. Thibodeaux's fall over the soccer player in April caused the herniation because she did not complain of head, neck, or radiating pain until after the 2006 automobile accident. Dr. Duval did not treat Ms. Thibodeaux for her neck complaints but testified that the 2006 automobile accident could have caused a herniation like hers.

It was the jury's duty to determine the credibility of the witnesses, including Drs. Granger and Duval, and to accept or reject their opinions in whole or in part. *Sportsman Store of Lake Charles, Inc. v. Sonitrol Sec. Sys. of Calcasieu, Inc.*, 99-201 (La. 10/19/99), 748 So.2d 417. Considering the record as a whole, we believe the jury concluded that Ms. Thibodeaux did suffer some injuries as a result of the 2006 automobile accident but did not accept her claims that her cervical disc herniation was caused by the accident and that she would undergo surgery for that herniation. We find this conclusion is reasonable in light of Ms. Thibodeaux's complaints after her 2002 automobile accident, Dr. Granger's acknowledgment that a fall like the one over the soccer player could have caused the cervical herniation, and Dr. Duval's testimony that a herniation like Ms. Thibodeaux's does not always require surgery.

### *Motion for Judgment Notwithstanding Verdict*

Discussion of this assignment of error is pretermitted by our determination that the jury's verdict is reasonable under the facts.

### *Disposition*

The judgment of the trial court is affirmed. All costs of this appeal are assessed to Garnet Thibodeaux.

**AFFIRMED.**

**GARNET THIBODEAUX**

**VERSUS**

**ELIZABETH WILLIAMSON, ET AL.**

**THIBODEAUX, Chief Judge, dissenting.**

The plaintiff's treating physician, Dr. Granger, testified unequivocally that the May, 2006 accident more probably than not caused the plaintiff's injuries. While he admitted on cross-examination that Ms. Thibodeaux's fall during a soccer game "could have" caused Ms. Thibodeaux's herniation, and he could not say with *certainty* that the injuries were precipitated by the 2006 accident, the law does not require such an absolute standard. It requires simply a preponderance of the evidence, not *certainty* of the evidence.

Both physicians who treated Ms. Thibodeaux linked her present medical problems to the May, 2006 accident. Dr. Granger, her long-time family physician, had not noticed any radiating pain in her right arm and upper extremities before the accident. Ms. Thibodeaux experienced pain in her left upper arm in October 2005. Following the May, 2006 accident, she felt pain in her right arm. Dr. Granger's testimony with respect to causation went essentially unchallenged. A court must accept as true the unchallenged testimony of a credible witness when the record indicates no sound reason for rejecting it. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979). Ms. Thibodeaux's claim is further buttressed by the fact that

future medicals were awarded. Thus, the jury certainly felt that she was continuing to have pain and this pain would require future medical intervention.

The aggregate jury award of $20,000.00 for past and future pain, suffering, and mental anguish is abusively low, given the gravity of Ms. Thibodeaux's cervical disc injury. I would increase the award to the lowest reasonable award under these circumstances, $150,000.00. Further, uncontradicted testimony placed the cost of a cervical discectomy and fusion surgery at approximately $40,000.00, an amount which I believe is appropriate.

For the foregoing reasons, I respectfully dissent.